IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JODI L. MEEK,

Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

Defendant.

Civ. No. 3:16-cv-02153-CL

REPORT & RECOMMENDATION

MARK D. CLARKE, Magistrate Judge.

Plaintiff Jodi L. Meek seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration denying her application for a period of disability, disability insurance benefits, and supplemental security income pursuant to the Social Security Act. For the reasons below, the Commissioner's decision should be AFFIRMED.

**BACKGROUND**

Plaintiff was born February 8, 1971, and is currently forty-six years old. Tr. 65. Plaintiff is divorced; has a high school education; and previously worked as a caregiver, a sales clerk, and a mail carrier/mail handler. Tr. 495-96, 58-59.

In February 2013, Plaintiff filed for a period of disability and disability benefits; she also filed for supplemental security income. Tr. 19. She alleged disability onset beginning July 1,

2010. Tr. 19. On March 3, 2015, Plaintiff had a hearing before an administrative law judge ("ALJ"). Tr. 40.

Plaintiff has been diagnosed with a long-term learning disability; in fact, she was in an individualized education plan from first through twelfth grade; however, she did graduate from high school with a "regular" diploma. Tr. 495-96. In August 2006, Laurence M. Binder, Ph.D, conducted a neuropsychological evaluation on Plaintiff, finding she "had difficulty on screening measures of academic achievement." Tr. 497. He diagnosed her with a reading-comprehension impairment, performing below the second percentile on a time measure that assessed reading comprehension. Tr. 497. Dr. Binder also noted that Plaintiff's math skills were below average. Tr. 500. He did opine, however, that Plaintiff "performed relatively well on measures of verbal learning and memory." Tr. 498. Indeed, "When recalling orally-presented stories she was at the 50th percentile immediately after presentation and the 75th percentile after a delay." Tr. 498. According to Dr. Binder, "This performance implies that she would perform adequately on remembering oral instructions." Tr. 498. In addition to performing well on verbal learning and memory measures, Dr. Binder also found that Plaintiff "performed adequately . . . on the token test involving comprehension of grammatically complex commands." Tr. 498. Consequently, Dr. Binder determined that Plaintiff would "learn better by receiving oral instructions rather than being asked to read material. . . . A combination of oral instructions and visual demonstration will be best for her when she learns a task or job." Tr. 500.

Despite her learning difficulties, Plaintiff has continued to pursue higher education; she began community college in 2007, was enrolled in classes in 2014, and hoped to reenroll after a brief hiatus in 2015. Tr. 47, 52. She does readily acknowledge, however, that her learning disability results in her having to take "more time to understand [class] work." Tr. 52. And she

frequents the tutor center and goes "to the disabilities part of the school to talk to them to see about getting extra help." Tr. 52. Hence, in her own words, she believes she is disabled due to her learning disability as well as chronic pain in both knees caused by neuropathy in her feet, both of which make it hard for her to focus; she further states that her knee pain would require her to "take more breaks than the average person." Tr. 47-48, 56. Plaintiff also has sleep apnea, though she uses a CPAP machine, which has helped "tremendously." Tr. 47, 55.

As stated, Plaintiff applied for disability in February 2013 and had a hearing in front of an ALJ in March 2015. Tr. 19, 40. Roughly a month after the hearing, on April 7, 2015, the ALJ issued her decision, which found that the severe impairments Plaintiff suffered from did preclude her ability to perform past relevant work but did not preclude her from performing other work that exists in significant numbers in the national economy, including work as a production assembler, price marker, or silver wrapper. Tr. 32-34. Accordingly, the ALJ determined Plaintiff was not disabled as defined by the Social Security Act.[1] Tr. 34. On September 13, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's denial the Commissioner's final decision. Tr. 1. This timely appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

[1]Plaintiff's claim had been initially denied on June 21, 2013, and upon reconsideration on October 30, 2013. Tr. 19.

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

**THE ALJ'S FINDINGS**

Applying the five-step analysis, the ALJ found:

1. Plaintiff has not engaged in substantial gainful activity since her alleged onset date of July 1, 2010. (20 CFR § 404.1571 *et seq.*). Tr. 21.

2. Plaintiff has the following severe medically determinable impairments: osteoarthritis of the bilateral knees; plantar fasciitis; diabetic peripheral neuropathy; anxiety disorder; depression; and a learning disorder. (20 CFR § 404.1520(c) and 416.920(c)). Tr. 21.

3. Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20

CFR Pt. 404, Subpt. P, App. 1. (20 CFR §§ 404.1520(d), 404.1525 & 404.1526). Tr. 22.

a. Plaintiff has the RFC to perform light work, except she can stand and walk one hour at a time and up to a total of four hours in an eight-hour workday. She can occasionally climb ramps and stairs; should not climb ladders, ropes, and scaffolds; can occasionally stoop and kneel; should not crouch or crawl; should avoid concentrated exposure to vibration; should avoid all exposure to hazards such as unprotected heights and exposed moving mechanical parts; can understand and remember simple instructions; has sufficient concentration, persistence, and pace to complete simple tasks at a steady pace for a normal workday and workweek; should have only cursory interactions with the general public; should not be required to do math as a work function; and would do best with verbal instruction. Tr. 25.

4. Plaintiff is unable to perform past relevant work. (20 CFR § 404.1565). Tr. 32.

5. After considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (20 CFR §§ 404.1569 and 404.1569(a)). Those jobs include production assembler, price marker, and silver wrapper. Tr. 33-34.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 34.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence'" means "'more than a mere scintilla but less than a preponderance,'" or more clearly stated, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court

must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

///

///

## DISCUSSION

Plaintiff's only argument on appeal is that the ALJ erred by failing to include, in the hypothetical she presented to the vocational expert, all of the limitations Dr. Binder found in his 2006 neuropsychological evaluation. For the reasons below, the Court holds that the ALJ did not err.

### I. The ALJ properly included the limitations found by Dr. Binder.

Plaintiff points out that the ALJ attributed "great weight" to Dr. Binder's 2006 evaluation, noting that although "the evaluation covers a period well before the alleged onset date, it does provide diagnoses of learning disorders in reading and math." Tr. 29, 31. Consequently, Plaintiff contends, "The ALJ erred because she fully credited Dr. Binder's opinion that Plaintiff had pronounced difficulties with reading, yet failed to include any limitations on reading in the dispositive hypothetical." Pl.'s Br., at 5 (internal citations omitted). Since any hypothetical that does not include all of a plaintiff's limitations has no evidentiary value, *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989), the vocational expert's finding—based on that hypothetical—that Plaintiff could engage in substantial gainful employment was insufficient evidence to support a finding of not disabled.

"If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (internal citation omitted). To do so, the Secretary is obligated to demonstrate that the claimant can perform other "substantial, gainful work" that exists in significant numbers in the national economy. *Magallanes*, 881 F.2d at 756. "Without other reliable evidence of a claimant's ability to perform specific jobs, the Secretary must use a vocational expert to meet that burden. Hypothetical questions posed to the vocational expert

must set out *all* the limitations and restrictions of the particular claimant. . . ." *Embrey*, 849 F.2d at 422. (emphasis in original) (internal citations omitted). The vocational expert's testimony is only valuable "to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982) (internal citations omitted). Thus, if the hypothetical is not supported by the record, then the vocational expert's opinion has no evidentiary value. *Magallanes*, 881 F.2d at 756 (citing *Embrey*, 849 F.2d at 422).

Here, Paul Morrison, a vocational expert, testified at Plaintiff's administrative hearing. Tr. 40. The ALJ posed the hypothetical of an individual with the same age, education, and work experience as Plaintiff. Tr. 60. The ALJ further stated, precisely in line with her RFC finding, that the individual would be limited to "light work, except the individual can stand and walk one hour at a time, up to a total of four hours in an eight hour workday." Tr. 60. Moreover, that "individual can occasionally climb ramps and stairs, should not climb ladders, ropes and scaffolds, can occasionally stoop and kneel, should not crouch or crawl[,] . . . should avoid concentrated exposure to vibration, should avoid all exposure to hazards such as unprotected heights and exposed moving mechanic parts." Tr. 60. Finally, the ALJ said,

> The individual can understand and remember simple instructions, has sufficient concentration, persistence and pace to complete simple tasks at a steady pace for a normal workday and work week. The individual should have only cursory interactions with the general public and should not be required to do math as a work function and would do best with verbal instruction.

Tr. 60. Mr. Morrison replied that such an individual would not be able to perform Plaintiff's past relevant work but would be able to perform other work that exists in significant numbers in the national economy, specifically, work as a production assembler, price marker, or a silver wrapper. Tr. 60-61.

Plaintiff does not dispute Mr. Morrison's finding; instead, she contends the ALJ's hypothetical was improper because it did not include "any limitations on reading," as reflected in Dr. Binder's 2006 neuropsychological evaluation. Pl.'s Br., at 5.

Contrary to Plaintiff's argument, the ALJ's hypothetical properly incorporated Dr. Binder's limitations. As discussed, Dr. Binder discovered that Plaintiff "has reading comprehension problems" and her math skills were "very limited"; however, she performed decently well on verbal learning and memory measures as well as on the token test, which involved "comprehension of grammatically complex commands." Tr. 497-98, 500. Based on these findings, Dr. Binder stated, "[H]er reading comprehension is poor, and her verbal intellectual abilities are quite limited.[2] She will learn better by receiving oral instructions rather than being asked to read material" and will best be served by "[a] combination of oral instructions and visual demonstration. . . ." Tr. 500.

The ALJ's language is, for all intents and purposes, identical to Dr. Binder's. Indeed, as with Dr. Binder, the ALJ noted in her hypothetical that Plaintiff "would do best with verbal instruction." Tr. 60. Moreover, the ALJ's finding that Plaintiff can understand and remember simple instructions is wholly in line with Dr. Binder's finding that Plaintiff performed well on verbal learning and memory measures as well as "comprehension of grammatically complex commands." Tr. 498. In fact, Dr. Binder expressly noted that "[w]hen recalling orally-presented stories," Plaintiff "was at the 50th percentile immediately after presentation and the 75th percentile after a delay." Tr. 498. As per Dr. Binder, "This performance implies that she would perform adequately on remembering oral instructions," Tr. 498, thus indicating a clear ability to

---

[2]Dr. Binder noted that "[t]he verbal comprehension index is not accurately named, as it actually involves the ability to define vocabulary, explain verbal similarities, and answer questions about fund of general information." Tr. 498. Consequently, while Plaintiff's verbal intellectual abilities were quite limited, her ability to understand verbal instructions was within the normal range, as Dr. Binder noted. *See* Tr. 498, 500.

understand and remember simple instructions, just as the ALJ found. Finally, while the ALJ did not preclude reading altogether, neither did Dr. Binder; he simply stated, as did the ALJ, that Plaintiff would learn better if given oral instructions. He did not, however, impose any specifically quantifiable limitations on reading, as Plaintiff seems to suggest; instead, he found that Plaintiff "is a person who is capable of improving her reading skills. . . ." Tr. 500. Consequently, Plaintiff's contention that the ALJ did not include Dr. Binder's reading limitations in her hypothetical is unfounded; rather, Dr. Binder's findings match the restrictions imposed by the ALJ in her hypothetical. Furthermore, because this is the only issue challenged on appeal, the Commissioner's decision should be affirmed.

**RECOMMENDATION**

Based on the foregoing, the decision of the Commissioner should be AFFIRMED. This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED this 29 day of August, 2017.

MARK D. CLARKE
United States Magistrate Judge